**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| MONICA ASUNCION LOPEZ-ARGUDIN | CIVIL ACTION NO. 26-4735 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| SCOTT LADWIG, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court is a Motion for a Temporary Restraining Order and Preliminary Injunction (Record Document 4) filed by Petitioner Monica Asuncion Lopez-Argudin ("Petitioner"). Due to her current medical condition, namely her high-risk pregnancy, Petitioner seeks an injunction directing Respondents to release her immediately from custody pending resolution of her Habeas Petition. See id. at 2. Alternatively, Petitioner asks the Court to enter an interim relief pending adjudication of her Habeas Petition directing Respondents to, among other things, arrange for specialized medical care and provide a diet appropriate for pregnancy. See Record Document 4-1 at 23-24.

Petitioner is a 33-year-old native and citizen of Cuba. See Record Documents 1 at 13 and 4 at 9. She fled Cuba and, in 2022, entered the United States. See Record Document 1 at 13-14. She was apprehended by immigration authorities shortly thereafter. See id. at 14. She was detained for about two week and then was released. See id. She lived openly in the United States while her removal proceedings were ongoing. See id.

Petitioner was detained on August 31, 2026, while riding in a vehicle with her partner. See id. She described the stop as a "routine check." Id. She is in removal proceedings and has a pending asylum application. See id. Her merits proceeding was

originally set for August 2027, but the immigration court advanced it to December 4, 2026, because she is detained. See id.

When ICE arrested her, Petitioner believed she was pregnant but had not confirmed it. See id. She told officials and her pregnancy was confirmed on or about September 2 or 3, 2026 when she arrived at the South Louisiana ICE Processing Center in Basile, Louisiana. See id. at 15; see also Record Document 4-1 at 7. Petitioner submits she is in her second-trimester of a pregnancy classified as high-risk. See Record Document 1 at 15. Petitioner's blood type is O-negative (Rh-negative), which means the pregnancy should be closely monitored. See id. She has also had complications in her two prior pregnancies and is asthmatic. See id. Petitioner further submits she has experienced vaginal bleeding on at least four occasions while detained and has been told "that her baby is smaller than expected for its gestational age." Id. Petitioner has been hospitalized at least four times during her detention and submits recommended follow-up medical care with a neurologist, a cardiologist, and an obstetrician have not occurred. See Record Document 4-1 at 10.

In her Habeas Petition and in her emergency motion for injunctive relief, Petitioner argues her detention violates the Accardi doctrine and the Administrative Procedure Act because it disregards ICE's own policy against detaining pregnant individuals (ICE Directive No. 11032.4). See id. at 13-15. She also argues her continued confinement amounts to unconstitutional punishment and is a violation of both substantive and procedural due process. See id. at 15- 20. In her Habeas Petition, Petitioner seeks immediate release. See Record Document 1 at 10.

An applicant for a Temporary Restraining Order ("TRO") must demonstrate each of the following: (1) a substantial likelihood his cause will succeed on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) the threatened injury outweighs the threatened harm the injunction may do to the opposing party, and (4) granting the injunction will not disserve the public interest. See Misquitta v. Warden Pine Prairie ICE Processing Center, 353 F. Supp.3d 518, 521 (W.D. La. Nov. 16, 2018) (citing Piedmont Heights Civic Club, Inc. v. Moreland, 637 F.2d 430 (5th Cir. 1981)). The decision of whether to grant or deny a TRO lies in the district court's discretion. See Moore v. Brown, 868 F.3d 398, 402 (5th Cir. 2017). Courts should deny such motions more often than not. See Albright v. City of New Orleans, 46 F.Supp.2d 523, 532 (E.D. La. 1999) (explaining that temporary restraining orders are "extraordinary relief and rarely issued."); see also Suburban Propane, L.P. v. D & S GCTX LLC, 2025 WL 2429087, at *2 (W.D. Tex. 2025) (holding that the extraordinary relief under Rule 65 must be "unequivocally show[n]."); see also Anderson v. Jackson, 556 F.3d 351, 355–56 (5th Cir. 2009) ("Only under 'extraordinary circumstances' will this court reverse the denial of a preliminary injunction.").

In this case, Petitioner seeks the injunctive relief of immediate release from immigration detention. Such relief is the same as the ultimate relief requested in her Habeas Petition. Another judge within this District decided a similarly situated case, stating:

> The Supreme Court, very recently, reminded lower courts that preliminary injunctions are, as their name suggests, preliminary and should "not conclusively resolve legal disputes." Lackey v. Stinnie, 604 U.S. 192, 200 (2025). In other words, they should not be used to rule on the final, merits question.

> Rather, TROs and preliminary injunctions help "preserve the status quo until a trial" or other final disposition is rendered. Id. at 193. That begs the question: what does it mean to preserve the status quo? While the words "status quo" do not appear within Rule 65 . . . , it is implicit in the "irreparable harm" prong. . . . Irreparable harm must also take away "the court's ability to render a meaningful decision on the merits." Canal Auth. of the State of Florida v. Callaway, 489 F.2d 567, 573 (5th Cir. 1974); see also Samuel L. Bray, The Purposes of the Preliminary Injunction, 78 Vand. L. Rev. 809, 823–26 (2025) (concluding the same after probing Founding-era sources). Put differently, "[t]here is always a status quo. There should not be a preliminary injunction to protect it, however, unless the court's ability to render a meaningful decision on the merits would otherwise be in jeopardy." Callaway, 489 F.2d at 573.

Pema Sherpa v. Judith Almodovar, et al., No. 3:25-CV-01718 SEC P, 2026 WL 74401, at *2 (W.D. La. Jan. 9, 2026). A ruling on the instant emergency motion should not resolve the legal disputes in this case as a whole. Thus, to the extent Petitioner asks for an order of immediate release from custody, the Court views this request as an effort to obtain a ruling on the merits of her Habeas Petition through injunctive relief. Petitioner's motion for injunctive relief is essentially a motion to decide the Habeas Petition now. See Garcia-Aleman v. Thompson, No. SA-25-CV-00886-OLG-HJB, 2025 WL 3769302, at *1 (W.D. Tex. Oct. 30, 2025).

The issues raised in the motion are more appropriately addressed through adjudication of the Habeas Petition, although the Court does believe additional monitoring of Petitioner's medical care is needed. The Court also wants to determine if expediated consideration of the Habeas Petition is warranted. Thus, Respondents are hereby **ORDERED** to submit a medical status report outlining Petitioner's medical care to the Court no later than **noon** on **Tuesday, November 17, 2026**. A telephone status conference is hereby set for **Wednesday, November 18, 2026**, at **1:30 p.m.** to discuss Petitioner's medical care. Call-in information will be distributed to counsel by email.

Accordingly,

**IT IS ORDERED** that Petitioner's Motion for a Temporary Restraining Order and Preliminary Injunction (Record Document 4) is **DENIED**.

**IT IS FURHTER ORDERED** that Respondents shall submit a medical status report as outlined above no later than **noon** on **Tuesday, November 17, 2026**.

**IT IS FURTHER ORDERED** that a telephone status conference is set for **Wednesday, November 18, 2026**, at **1:30 p.m.** to discuss Petitioner's medical care.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 10th day of November, 2026.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE